In The

# United States Court Of Appeals
## For The Fourth Circuit

### SALOMON & LUDWIN, LLC,

*Plaintiff - Appellee,*

v.

### JEREMIAH WINTERS; CATHERINE ATWOOD; JENNIFER THOMPSON; ABBEY SORENSON; ALBERO ADVISORS, LLC, d/b/a FOUNDERS GROVE WEALTH PARTNERS, LLC,

*Defendants - Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

———————

**BRIEF OF APPELLANTS**

———————

Henry I. Willett III
CHRISTIAN & BARTON, LLP
901 East Cary Street
Suite 1800
Richmond, VA 23219
(804) 697-4130
hwillett@cblaw.com

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _24-1728_      Caption: _Salomon & Ludwin, LLC v. Jeremiah Winters, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Jeremiah Winters_
(name of party/amicus)

_____

 who is _____an appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Henry I. Willett III                    Date:      08/21/2024

Counsel for: Appellants

- 2 -

Print to PDF for Filing      Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1728__     Caption: __Salomon & Ludwin, LLC v. Jeremiah Winters, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Catherine Atwood__
(name of party/amicus)

_____

who is _____an appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐ YES ☑ NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐ YES ☑ NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Henry I. Willett III                    Date:    08/21/2024

Counsel for: Appellants

Print to PDF for Filing      Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1728__      Caption: __Salomon & Ludwin, LLC v. Jeremiah Winters, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Abbey Sorensen__
(name of party/amicus)

_____

 who is _____an appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?              ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?              ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Henry I. Willett III                    Date:    08/21/2024

Counsel for: Appellants

Print to PDF for Filing        Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1728__      Caption: __Salomon & Ludwin, LLC v. Jeremiah Winters, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jennifer Thompson__
(name of party/amicus)

_____

 who is _____an appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:



3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Henry I. Willett III                    Date:    08/21/2024

Counsel for: Appellants

Print to PDF for Filing          Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1728__      Caption: __Salomon & Ludwin, LLC v. Jeremiah Winters, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Founders Grove Wealth Partners, LLC f/k/a Albero Advisors, LLC__
(name of party/amicus)

_____

 who is _____an appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:




3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                   ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Henry I. Willett III                    Date:      08/21/2024

Counsel for: Appellants

- 2 -

[Print to PDF for Filing]   [Reset Form]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF ISSUES .........................................................................2

STATEMENT OF CASE .............................................................................3

SUMMARY OF ARGUMENT ...................................................................8

STANDARD OF REVIEW .......................................................................12

ARGUMENT .............................................................................................13

     I.     The District Court Abused Its Discretion and Erred as a Matter of Law in its Application of a "Raiding Exception" to the Protocol.................................................................................13

     II.    The District Court Abused Its Discretion and Erred as a Matter of Law in Finding a Likelihood of Success on the Merits Against Investment Advisors Winters and Atwood and Founders Grove .......21

     III.   The District Court Abused Its Discretion and Erred as a Matter of Law in Finding a Likelihood of Success on the Merits Related to Claims Asserted Against Support Employees Thompson and Sorensen .............................................................................24

     IV.   The District Court Abused Its Discretion and Erred as a Matter of Law in Finding That, Absent an Injunction, S&L Would Face Irreparable Harm ...................................................................27

          A.     Adequate Remedy at Law (Monetary Damages).....................27

          B.     Protocol Membership.................................................32

CONCLUSION..........................................................................................35

CERTIFICATE OF COMPLIANCE.........................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amoco Prod. Co. v. Village of Gambell*,
   480 U.S. 531 (1987)......................................................................................13

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*,
   No. CV SAG-22-00176, 2022 WL 326473
   (D. Md. Feb. 3, 2022) ..................................................................................30

*Cont. Assocs., Inc. v. Atalay*,
   No. 1:14-CV-882, 2015 WL 1649051 (E.D. Va. Apr. 10, 2015)..................19

*Credit Suisse Sec. (USA) LLC v. Lee*,
   No. 11-CIV-08566(RJH), 2011 WL 6153108
   (S.D.N.Y. Dec. 9, 2011) ...............................................................................34

*Di Biase v. SPX Corp.*,
   872 F.3d 224 (4th Cir. 2017) ........................................................................27

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
   17 F.3d 691 (4th Cir. 1994) .....................................................................27, 31

*Integrity Auto Specialists, Inc. v. Meyer*,
   83 Va. Cir. 119 (2011)..................................................................................19

*JTH Tax, Inc. v. Donofrio*,
   No. CIV A 2:06CV47, 2006 WL 2796841
   (E.D. Va. Sept. 26, 2006) .............................................................................30

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Baxter*,
   No. 09-CV-45 (DAK), 2009 WL 960773
   (D. Utah Apr. 8, 2009)..................................................................................32

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*,
   839 F. Supp. 68 (D. Me. 1993).................................................................30, 31

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Brennan*,
   No. 07-CV-475, 2007 WL 632904 (N.D. Ohio Feb. 23, 2007) ....................33

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. de Liniere*,
   572 F. Supp. 246 (N.D. Ga. 1983)................................................................28

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*,
    477 F. Supp. 2d 472 (D. Conn. 2007) ...........................................................33

*Morgan Stanley DW, Inc. v. Frisby*,
    163 F. Supp. 2d 1371 (D. Ga. 2001) ...........................................................28

*OROS, Inc. v. Dajani*,
    No. 119-cv-351, 2019 WL 2361047 (E.D. Va. June 4, 2019) .....................25

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) .................................................................12, 13

*Prudential Securities, Inc. v. Plunkett*,
    8 F. Supp. 2d 514 (E.D. Va. 1998) ..............................................................28

*Sampson v. Murray*,
    415 U.S. 61 (1974)........................................................................................27

*Sch. Bd. of Richmond v. Wilder*,
    73 Va. Cir. 251 (Richmond Cir. Ct. 2007) ...................................................28

*In re Search Warrant Issued June 13, 2019*,
    942 F.3d 159 (4th Cir. 2019) .......................................................................13

*Smith Barney Div. of Citigroup Glob. Markets Inc. v. Griffin*,
    No. CIV.A. 08-0022-BLS1, 2008 WL 325269
    (Mass. Super. Jan. 23, 2008) .......................................................................32

*Smith Barney, Inc. v. Darling*,
    No. 09-C-540, 2009 WL 1544756 (E.D. Wis. June 3, 2009)........................33

*Superior Performers, Inc. v. Meaike*,
    No. 1:13CV1149, 2014 WL 1412434 (M.D.N.C. Apr. 11, 2014) ...............30

*UBS Financial Services Inc. v. Fiore*,
    2017 WL 3167321 (D. Conn. July 24, 2017)...............................................29

*Wachovia Sec., LLC v. Gates*,
    No. 3:08CV226, 2008 WL 1803612 (E.D. Va. April 21, 2008)..................29

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)..................................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..............................................................................12, 13

**Statutes**

28 U.S.C. § 1292(a)(1)...................................................................................1, 3

28 U.S.C. § 1331 ...............................................................................................1

Defend Trade Secrets Act (DTSA)..................................................5, 21, 24, 25, 26

Va. Code § 59.1-336, *et seq.* .........................................................................24

Va. Code § 59.1-366 .......................................................................................24

Virginia Uniform Trade Secrets Act (VUTSA).................................5, 21, 24, 25, 26

**Rules**

Fed. R. Civ. P. 65(a)........................................................................................13

**Other Authorities**

Jack Metzler, *Cleaning Up Quotations*,
    18 J. App. Prac. & Process 143, 154 (2017)....................................................12

John D. Finnerty et al., *Calculating Damages in Broker Raiding Cases*,
    11:2 Stan. J.L. Bus. & Fin. 261, 264 (2006).....................................15, 16, 18

This brief is submitted by Defendants-Appellants Jeremiah Winters ("Winters"), Catherine "Kate" Atwood ("Atwood"), Jennifer Thompson ("Thompson"), Abbey Sorensen ("Sorensen") (Winters, Atwood, Thompson, and Sorensen, collectively, the "Individual Appellants"), and Founders Grove Wealth Partners, LLC f/k/a Albero Advisors, LLC ("Founders Grove") (collectively with the Individual Appellants, "Appellants").

## STATEMENT OF JURISDICTION

The District Court asserted jurisdiction over this matter pursuant to 28 U.S.C. § 1331.[1] The District Court entered the instant Order (granting the Motion for Preliminary Injunction filed by Appellee Salomon & Ludwin, LLC ("Appellee" or "S&L")) on July 23, 2024. JA985-1000; JA1001-1002. Appellants timely filed their Notice of Interlocutory Appeal of Order Granting Preliminary Injunction on August 2, 2024. JA1003. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(a)(1), as this appeal is from an order granting a preliminary injunction.

---

[1] On June 13, 2024, Appellants moved to dismiss or, in the alternative, to transfer venue from the District Court in accordance with the clear and unambiguous forum selection clauses in the contracts relied upon by Appellee. JA499; JA502. To date, the District Court has not addressed the motion.

# STATEMENT OF ISSUES

1.     Whether the District Court erred as a matter of law or abused its discretion when it applied what it describes as a "raiding exception" or "raiding exemption" to the Protocol for Broker Recruiting (the "Protocol").

2.     Whether the District Court erred as a matter of law or abused its discretion when it enjoined Winters and Atwood, as well as Founders Grove, based on a finding of likelihood of success on the merits as to the misappropriation of trade secrets claims asserted against them in reliance on the "raiding exception" to the Protocol.

3.     Whether the District Court erred as a matter of law or abused its discretion when it enjoined Thompson and Sorensen based on a finding of likelihood of success on the merits as to the misappropriation of trade secrets claims asserted against them in reliance on the "raiding exception" to the Protocol where S&L offered no evidence to support the proposition that either removed or utilized any of S&L's confidential information.

4.     Whether the District Court erred as a matter of law or abused its discretion when it enjoined Appellants based on a finding that, in the absence of a preliminary injunction, S&L would be irreparably harmed, failing to find that (i) S&L has an adequate remedy at law (i.e., monetary damages, as evidenced by a liquidated damages provision in the Individual Appellants' employment agreements) and (ii) S&L's Protocol membership negates any finding of irreparable harm.

## STATEMENT OF CASE

This interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) stems from a preliminary injunction entered by the District Court prohibiting Appellants from "disclosing or using any of Plaintiff's trade secrets or proprietary information" and "soliciting or attempting to solicit any of Plaintiff's clients." JA1001 ¶¶1-2.

This case arises from a dispute between S&L, a registered investment advisory firm, on the one hand, and S&L's former employees, the Individual Appellants, and their new firm, Founders Grove, on the other hand. JA10. Winters and Atwood were investment advisor representatives at S&L. JA220 ¶3; JA224 ¶3. Thompson was the Director of Client Relations and Sorensen was the Senior Client Relationship Associate at S&L. JA228 ¶3; JA232 ¶3. The Individual Appellants resigned from S&L on May 24, 2024, and joined Founders Grove. JA221 ¶7; JA225 ¶6; JA229 ¶6; JA233 ¶6.

S&L and Founders Grove are both Member Firms of the Protocol. JA247-248. The Protocol is a voluntary cease fire contract between Member Firms for the orderly transition of advisors from Member Firm to Member Firm. JA441-443; JA446. Because both S&L and Founders Grove are Protocol Member Firms, the Protocol permitted Winters and Atwood to retain and use certain client contact information that they provided to S&L at the time of their resignations, and advised S&L that they would be taking with them, to solicit the clients they previously

serviced. S&L, as a Protocol Member Firm, agreed to forbear from enforcing restrictive covenants contained in Winters' and Atwood's employment agreements. JA50-106; JA441-443. As they are not investment advisors, Thompson and Sorensen are not covered by the Protocol and S&L offered no evidence that either took or used any of S&L's information or solicited any clients—a contention they expressly deny. JA229 ¶6; JA233 ¶6.

> The Protocol provides, in pertinent part:

> When [financial advisors] move from one firm to another and both firms are signatories to this protocol, they may take only the following account information: client name, address, phone number, email address, and account title of the clients that they serviced while at the firm ("the Client Information") and are prohibited from taking any other documents or information. Resignations will be in writing delivered to local branch management and shall include a copy of the Client Information that the [financial advisor] is taking with him or her.

> . . .

> If departing [financial advisors] and their new firm follow this protocol, neither the departing [financial advisor] nor the firm that he or she joins would have any monetary or other liability to the firm that the [financial advisor] left by reason of the [financial advisor] taking the information identified below or the solicitation of the clients serviced by the [financial advisor] at his or her prior firm . . . .

JA441. As investment advisor representatives, Winters and Atwood complied with the Protocol by only retaining the following information after submitting their written resignations: Client Names, Client Addresses, Client Phone Numbers, Client E-mail Addresses and Client Account Titles (the "Protocol List"). In accordance

with the Protocol, Winters and Atwood provided S&L with this same information as well as Client Account Numbers. JA221; JA225; JA441. The Protocol authorized Winters and Atwood to use their respective Protocol Lists to contact and solicit the clients identified therein to transition their business to Founders Grove. JA441-443.

On May 28, 2024, S&L filed its Complaint [JA10] and Motion for Emergency Temporary Restraining Order [JA148; JA153] asserting claims against Appellants for purported violations of the Defend Trade Secrets Act (the "DTSA") and the Virginia Uniform Trade Secrets Act (the "VUTSA"), tortious interference with business relations, breach of the duty of loyalty, breach of contract, and declaratory judgment. As Appellants fully complied with the Protocol, which protects new firms and investment advisors during transitions, each of S&L's claims necessarily fails. JA717-749.

S&L initially asserted in its Complaint that it was not a Protocol Member Firm but, when challenged, later asserted in briefing that Appellants contractually agreed that the Protocol does not apply despite S&L's membership in the Protocol. JA20 ¶70; JA270-271. S&L also failed to include in its Complaint any allegations concerning "team agreements" or "raiding" [JA10-47], but later argued in briefing that these exceptions to the Protocol apply [JA772-778]. With respect to "raiding," S&L contends that "[t]he Protocol plainly 'does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for raiding.'" JA776.

In granting S&L's motion for preliminary injunction on July 23, 2024, the District Court found that "in the event the Protocol controls, the raiding exception likely applies here." JA993. The District Court went on to find that "Defendants' actions likely fall under the raiding exemption of the Protocol, and Winters, Atwood, Sorensen, and Thompson **are still subject to their duties of confidentiality**. For these reasons, Plaintiff is likely to succeed on Counts I and II [the statutory trade secrets claims]." JA996 (emphasis added). The Protocol simply provides that "it does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for 'raiding.'" JA441. This is the only reference to "raiding" in the Protocol. S&L has not argued that the "raiding exception" negates the protections of the Protocol, as ruled by the District Court. JA675-697; A767-784; JA996.

In finding that a "raiding exception" likely applies, the District Court adopted a dual-prong definition of "raiding:" (i) "severe economic impact," using "40% of production as a guideline rather than a hard cutoff," and (ii) "predation," meaning "trying to put somebody out of business" relying, in part, on an article cited by S&L. JA994-995. The District Court found "severe economic impact" likely satisfied by "the number of employees that left and the [number] of clients lost," divorced from monetary percentages—the metric utilized in the article cited by S&L. JA994-995. The District Court further found "predation" likely satisfied based on Appellants "collud[ing] together [while still employed by S&L] to leave [S&L], create

[Founders Grove], and take a substantial amount of [S&L's] business with them[.]" JA995-996.

In analyzing the trade secrets claims after finding the "raiding exemption" likely allowed S&L to pursue these claims, the District Court further found that Winters and Atwood "admit[ted] they took certain client information and account names with them when they resigned," relying on Winters and Atwood's acknowledgment that they followed the Protocol. JA992. As to Sorensen, Thompson, and Founders Grove, the District Court summarily determined that "the fact that hundreds of [S&L's] clients have move their accounts to [Founders Grove] is circumstantial evidence that [all Appellants] used [S&L's] client information to solicit these clients," without addressing Sorensen and Thompson's unrebutted denial that they removed confidential information or solicited clients. JA992; JA229 ¶6; JA233 ¶6.

Addressing irreparable harm, the District Court found that S&L showed it will likely suffer irreparable harm because it "established that there is a high likelihood that it has permanently lost clients and that it will continue to do so absent injunctive relief." JA998. The District Court failed to address Appellants' arguments that, even if S&L were to prevail on its claims, it has an adequate remedy at law in the form of contractual liquidated damages and that S&L's voluntary membership in the Protocol—which permits advisors to compete for clients—means that it cannot claim it has been irreparably harmed. JA998.

This timely appeal followed.

# SUMMARY OF ARGUMENT

The District Court abused its discretion and erred as a matter of law in granting S&L's motion for a preliminary injunction.

Winters and Atwood, investment advisors, relied on the protections of the Protocol when transitioning from S&L to Founders Grove. JA441-443; JA221 ¶7; JA225 ¶6; JA247-248. Both S&L and Founders Grove are investment advisory firms who elected to become Member Firms of the Protocol.[2] JA441-443; JA221 ¶7; JA225 ¶6; JA247-248. By entering into the Protocol, S&L and Founders Grove agreed that if investment advisors follow the process prescribed by the Protocol in transitioning between Protocol Member Firms, then restrictive covenants in employment agreements with those investment advisors will not be enforced and the advisors and new firm would not have any "monetary or other liability" to the former firm. JA441.

As permitted under the Protocol, Winters and Atwood compiled their respective Protocol Lists and provided those same Protocol Lists, with account numbers, to S&L—notifying S&L of the clients they serviced as lead advisors that

---

[2] Once confronted with its membership in the Protocol, S&L originally took the position that it "was likely entered on the Protocol list by the compliance officer it retained to help the firm transition from Wells Fargo to an independent firm." JA516 n1; JA532 ¶16. However, as shown on S&L's Joinder Agreement for Broker Protocol, its CEO, Dalal M. Salomon, signed the Protocol contract on March 25, 2018. JA963.

they would be contacting once they joined Founders Grove. JA221 ¶7; JA225 ¶6; JA756 ¶3; JA759 ¶2. In accordance with the Protocol, after joining Founders Grove, Winters and Atwood used their respective Protocol Lists to contact and solicit the clients that they serviced at S&L. JA221 ¶7; JA225 ¶6. Thompson and Sorensen, who are not investment advisors, also joined Founders Grove, but are not part of the Protocol process and did not take or use any client information. JA441-443; JA229 ¶6; JA233 ¶6.

As contemplated by the Protocol, some of the clients Winters and Atwood serviced as lead advisors at S&L voluntarily transitioned their accounts to Founders Grove. JA441-443. S&L filed its Complaint initially denying that the Protocol had any applicability, asserting:

> The Employment Agreement also provides that S&L is "not part of or subject to broker protocols," including protocols related to client solicitation or confidential information, and that the agreement "shall apply and control in the event that any terms" of the agreement or broker protocols conflict. FS Agreement § 25; AP Agreement § 25.

JA20 ¶70.[3] Once confronted with its membership in the Protocol, S&L pivoted and argued that, although it is a Protocol Member Firm and despite the fundamental purpose of the Protocol, the Individual Appellants' Employment Agreements

---

[3] The term "Employment Agreements" is defined as the Financial Services Professional Employment Agreements entered into by Winters [JA50-63] and Atwood [JA65-78] and the Administrative Professional Employment Agreements entered into by Thompson [JA80-92] and Sorensen [JA94-100].

somehow negate its obligations under the Protocol—a contract between S&L and the other 2,500 Protocol Member Firms, including Founders Grove. JA270-271; JA559-560. Relying on this argument, S&L moved for the instant preliminary injunction to prevent Appellants from using Winters and Atwood's respective Protocol Lists and soliciting the clients that Winters and Atwood had serviced as expressly permitted by the Protocol. JA675-697.

The District Court abused its discretion and erred as a matter of law in granting S&L's motion for a preliminary injunction for four primary reasons:[4]

- First, the District Court erred by treating "raiding" as an exception negating the protections of the Protocol, rather than an independent claim against a new firm that exists despite the continued application of the Protocol. JA993. Even under the District Court's adopted elements for the purported "raiding" exception, the evidence does not show a likelihood that it applies. The District Court created an unprecedented standard of "severe economic impact" as an element of a "raiding" claim but lacked the record evidence necessary to determine if the economic impact was in fact severe. JA994-995. The District Court also defined the element of "predation" as "trying to put

---

[4] For avoidance of doubt, Appellants do not concede that the remainder of the District Court's opinion is correct for purposes of any final judgment on the merits.

somebody out of business," then found that planning for future employment somehow likely satisfied that definition. JA994 (citing JA903); JA995-996.

- Second, as to Winters and Atwood—beneficiaries of the Protocol—and Founders Grove, the District Court erroneously found that the likely presence of "raiding" negated the Protocol's protections for investment advisors and new firms, thereby allowing S&L to proceed on its trade secret claims. JA989-996. The Protocol, however, states that a determination of "raiding" only means that a "raiding" claim can be pursued against a "new firm." JA441. For this reason, the District Court erred in finding a likelihood of success on the merits against Winters and Atwood, as well as Founders Grove.

- Third, as to Thompson and Sorensen, the District Court erroneously concluded that "Defendants" acquired, used, or disclosed S&L's trade secrets. JA992. Because no such evidence exists as to Thompson or Sorensen, or was even attempted to be presented as to them, the District Court erred in finding a likelihood of success on the merits against Thompson and Sorensen.

- Fourth, the District Court erroneously found that S&L established, in the absence of a preliminary injunction, it would suffer irreparable

harm. JA996-998. The District Court erred in wrongfully rejecting (i)

S&L's adequate remedy at law (*i.e.*, monetary damages, as evidence by

a liquidated damages provision in the employment agreements), and (ii)

significant legal precedent that S&L's Protocol membership negates a

finding of irreparable harm. JA996-998; JA738-743.

For these reasons, as discussed in greater detail below, this Court should

vacate the District Court's order granting the preliminary injunction.

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction for abuse of

discretion, recognizing that "preliminary injunctions are extraordinary remedies

involving the exercise of very far-reaching power[.]" *Pashby v. Delia*, 709 F.3d 307,

319 (4th Cir. 2013) (cleaned up)[5]; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 24 (2008) (A preliminary injunction is an "extraordinary remedy never

awarded as of right.") (citation omitted). Pursuant to this standard, this Court reviews

factual findings for clear error and legal conclusions *de novo*. *Pashby*, 709 F.3d at

319. "Because preliminary injunctions are extraordinary remedies involving the

---

[5] The parenthetical "(cleaned up)" signifies that the author "has removed extraneous, non-substantive material like brackets, quotation marks, ellipses, footnote reference numbers, and internal citations; may have changed capitalization without using brackets to indicate that change; and affirmatively represents that the alterations were made solely to enhance readability and that the quotation otherwise faithfully reproduces the quoted text." Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 154 (2017).

exercise of very far-reaching power, this Court should be particularly exacting in its use of the abuse of discretion standard when it reviews an order granting a preliminary injunction." *Id.* (cleaned up).

In considering a preliminary injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). Furthermore, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotation marks omitted)). To obtain a preliminary injunction, a movant must meet the high burden of demonstrating that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities weighs in its favor; and (4) a preliminary injunction is in the public interest. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 171 (4th Cir. 2019); *see also* Fed. R. Civ. P. 65(a).

## ARGUMENT

### I.     The District Court Abused Its Discretion and Erred as a Matter of Law in its Application of a "Raiding Exception" to the Protocol

Instead of addressing S&L's argument that the Employment Agreements somehow override its obligations under the Protocol, the District Court's granting of the preliminary injunction is dependent on what it calls a "raiding exception" or

"raiding exemption" to the Protocol. JA993 ("[I]n the event the Protocol controls, the raiding exception likely applies here. Because of this finding, it is unnecessary for the court to determine whether Defendants' Agreements override the protocol or whether the team agreement exception applies."). The Protocol mentions "raiding" one time and does not define the term beyond stating that "raiding" is an action against the new firm: "[T]his protocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for 'raiding.'" JA441.

The District Court erred as a matter of law by applying a "raiding exception" that S&L did not assert and that simply does not exist in the Protocol. S&L has not asserted a claim for "raiding," and its Complaint does not mention the word "raiding" or any variation of the word "raid." JA10-48. Nevertheless, the District Court erroneously, and in contradiction to the plain language of the Protocol, treated raiding as a breach of the Protocol that wholly negates any Protocol protections, rather than as an independent claim. JA996. The District Court found that because the purported "raiding exception" likely applies, the Individual Appellants "are still subject to their duties of confidentiality" and it could proceed to analyze the trade secrets claim. JA989-996. The District Court erred as a matter of law because "raiding" against Founders Grove is the claim permitted by the Protocol, not misappropriation of trade secrets against Founders Grove or the Individual Appellants. JA441.

The District Court further erred as a matter of law by not following the "raiding" elements it adopted. "Raiding" is not defined in the Protocol and no party has identified any explanatory caselaw defining or applying the term. As such, the parties presented competing definitions from secondary sources (*see* JA993-995). Appellants relied on the unrebutted expert testimony of John Maine[6] that raiding consists of three elements: "(1) taking at least 40% of production, (2) improper means, and (3) predation." JA994 (citing JA900-901; JA902-903).

The District Court adopted a multi-element definition of "raiding" from an article relied on by S&L, referencing an industry conference:

> Proving a raiding claim requires showing that a "severe economic impact" resulted and that the alleged raider's behavior involved "malice/predation" and/or "improper means[.]"

JA994 (quoting John D. Finnerty et al., *Calculating Damages in Broker Raiding Cases*, 11:2 Stan. J.L. Bus. & Fin. 261, 264 (2006)); JA995 ("The Court will adopt, in large part, the definition of 'raiding' provided in the Finnerty article."). Despite this acceptance, the District Court chose to ignore the article's, and John Maine's, conclusion that a "severe economic impact" exists when "the alleged improper hiring involves at least 40 percent of the business unit's production" JA994 (quoting

---

[6] Appellants relied on Mr. Maine, an expert retained approximately "50 plus" times in matters addressing the Protocol and in "40 or 50 raiding" cases [JA889], to explain the origin and historical application of the Protocol and what the term raiding means in the financial services industry. JA958-959.

John D. Finnerty et al., *Calculating Damages in Broker Raiding Cases*, 11:2 Stan. J.L. Bus. & Fin. 261, 264 (2006)); JA994 (citing JA900-901; JA902-903). Instead, the District Court selectively, and without explanation or justification, determined that losing "40% of the production [w]as a **[mere] guideline** rather than a hard cutoff" and then failed to even consider S&L's loss of "production." JA995 (emphasis added).

The District Court abused its discretion in its analysis of "severe economic impact." In full, the District Court stated:

> Defendants Winters, Atwood, Thompson, and Sorensen comprised 40% of Plaintiffs employees. When broken down by financial advisors, Winters and Atwood made up half of Plaintiff's financial advising team. Additionally, though it is unclear what percentage of accounts were taken from Plaintiff, FGWP took over 400 accounts, containing assets of over $300,000,000. (Hearing Ex. 6 at 1[JA1059].) The Court finds that the combination of the number of employees that left and the amount of clients lost constitute a severe economic impact to Plaintiff.

JA995. The District Court's error, in part, lies in the fact that no data was presented regarding the "business unit's [i.e., S&L's] production":

- As the District Court acknowledged, it was not provided information to determine the percentage of accounts that switched from S&L to Founders Grove. JA995.

- S&L did not provide information regarding the total assets handled by S&L or profits received by S&L prior to the Individual Appellants' departures.

- S&L expressly stated that none of the Individual Appellants were producers.

JA12 ¶12; *see also* JA163 ("none of the former employees ever prospected or developed their own clients while working for S&L"); JA703 ¶20 ("Other than the Founders, no one brought clients into the firm or prospected clients while at the firm, as this was not what they were hired to do.").

- Even accepting the District Court's consideration of the number of employees departing, instead of the percentage of production, the District Court erred as less than 40 percent of S&L's investment advisors transitioned to Founders Grove. According to S&L's website, it still has four investment advisors servicing clients after the departure of Winters and Atwood, including the firm's two co-founders, and two additional Certified Financial Planners. JA426; JA462 ¶2; JA465.

- S&L reported to clients the evening of the Individual Appellants' departure, "we were notified that a few of our teammates have decided to pursue another opportunity." S&L went on to say "[w]hile we know that you may have worked with some of these team members, Salomon & Ludwin is more than any one individual. We look forward to continuing to guide, advise, and support you and your families, with the same care and expertise that we have over the past 40 years." Concluding with "Dale, me, and the entire team, are here to answer any questions you have." JA498.

Despite S&L's burden to establish "severe economic impact," it provided the District Court with no evidence of its percentage of lost production. Instead, the District Court merely had raw numbers regarding the business that transitioned. The closest item presented at the preliminary injunction hearing related to the percentage of production that transitioned was testimony from Appellants' expert, John Maine, that "I think they said they [Founders Grove] had taken $360 million. And I think the firm had a billion three or a billion four." JA914. The District Court did not rely on this testimony. Nevertheless, if it had, it would result in a percentage of assets (production) transitioned between 25 and 28 percent (JA914), a far cry below the industry agreement that a "severe economic impact" exists when "the alleged improper hiring involves at least 40 percent of the business unit's production" (JA994 (quoting John D. Finnerty et al., *Calculating Damages in Broker Raiding Cases*, 11:2 Stan. J.L. Bus. & Fin. 261, 264 (2006))). Given that preliminary injunctions "involv[e] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances," a vague "guideline" for "severe economic impact"—not even followed by the District Court—is insufficient. The District Court lacked necessary information to determine whether the economic impact was in fact "severe."

Moreover, the District Court abused its discretion in its analysis of "predation." JA995-996. The only definition of "predation" cited by the District

Court is "trying to put somebody out of business." JA994 (citing JA900-901; JA902-903). Rather than focusing on whether Appellants "tri[ed] to put [S&L] out of business," the District Court found "predation" satisfied by the fact that the Individual Appellants' planned to leave S&L and form Founders Grove while still employed by S&L:

> [T]he circumstances speak for themselves. Winters, Atwood, Sorensen, and Thompson all resigned on the same day, all formed FGWP, and then began soliciting Plaintiffs clients. Additionally, Daniel Gleisner, a digital investigator, testified that he recovered artifacts related to FGWP on Sorensen's and Winters' computers, which were created before they resigned from their positions with Plaintiff. (Tr. at [JA841-842] 27:18 – 28:9; [JA843 at] 29:15-25) These facts demonstrate that Defendants colluded together to leave Plaintiff, create FGWP, and take a substantial amount of Plaintiff's business with them, thus satisfying the element of predation.

JA995-996.[7] The Individual Appellants do not deny these facts, as preparing for departure is entirely permissible under Virginia law[8] and consistent with the Protocol.

---

[7] Notably, Daniel Gleisner, an expert witness retained by S&L, testified at the preliminary injunction hearing that he had no evidence that any of the Individual Appellants had removed any information from S&L. JA855-856 (The Court: "…did you determine that information had been downloaded or taken off of plaintiff's computers by these defendants?" Mr. Gleisner: "No, there is not evidence of data being transferred off of the computer to a USB storage device.").

[8] Virginia courts have recognized that "the employee does have the right to make arrangements during his employment to compete with his employer after resigning his post." *Integrity Auto Specialists, Inc. v. Meyer*, 83 Va. Cir. 119 (2011). JA423-424 (citing *Meyer*, 83 Va. Cir. 119 (2011) (defendant's pre-termination actions were permissible "'arrangements' made during his employment in contemplation of post-termination competition with his employer"); *Cont. Assocs., Inc. v. Atalay*, No. 1:14-CV-882, 2015 WL 1649051, at *4 (E.D. Va. Apr. 10, 2015) (citing with approval

Critically, preparing to depart an employer certainly does not establish that any Appellant was "trying to put [S&L] out of business" and therefore cannot satisfy even the District Court's own definition of "predation." If preparing to depart establishes "predation," as determined by the District Court, the exception would swallow the Protocol, as every investment advisor following the Protocol would satisfy "predation" by planning future employment and preparing their Protocol Lists in the hope of transitioning their clients to their new firm. Additionally, the fact that Winters and Atwood only took information for the clients they serviced as lead advisors, rather than information for all S&L clients, shows that they were not "trying to put [S&L] out of business." JA756 ¶3; JA759 ¶2. Atwood, Thompson, and Sorensen also provided detailed explanations as to why they had no choice but to leave S&L in their respective resignation letters submitted at the time of their departures, rebutting any notion that their objective was to put S&L out of business. JA234; JA237; JA240.The District Court disregarded their explanations. JA995.

For these reasons, the District Court abused its discretion in misapplying the standard for "raiding" that it adopted.

---

*Meyer* and stating that "[d]efendants' actions prior to their resignations were at most arrangements in contemplation of future competition with CAI, not active solicitation attempts")).

## II. The District Court Abused Its Discretion and Erred as a Matter of Law in Finding a Likelihood of Success on the Merits Against Investment Advisors Winters and Atwood and Founders Grove

The District Court abused its discretion and erred as a matter of law when it incorrectly held that the likely existence of a "raiding" claim *negates* the Protocol's protections for Winters and Atwood and further when it found that S&L is likely to succeed on the merits against Winters and Atwood for misappropriation of trade secrets under the DTSA and the VUTSA. JA996 ("Defendants' actions likely fall under the raiding exemption of the Protocol, and Winters, Atwood, Sorensen, and Thompson are still subject to their duties of confidentiality."); *see also* JA993 ("The Court begins with an analysis of the raiding exception and finds that, in the event the Protocol controls, the raiding exception likely applies here. Because of this finding, it is unnecessary for the Court to determine whether Defendants' Agreements override the protocol or whether the team agreement exception applies.").

The District Court erred as a matter of law because no "raiding exception" exists in the Protocol that negates the Protocol's protections for departing financial advisors. Instead, the Protocol states only that it preserves a claim for raiding against a new firm—nothing more. One need look no further than the contractual language of the Protocol to understand that it only permits a "raiding" claim and that applies only to the new firm:

> If departing [financial advisors] and their new firm follow this protocol, neither the departing [financial advisor] nor the firm that he or she joins

would have any monetary or other liability to the firm that the [financial advisor] left by reason of the [financial advisor] taking the information identified below or the solicitation of the clients serviced by the [financial advisor] at his or her prior firm, **provided, however, that this protocol does not bar or otherwise affect the ability of the prior firm to bring an action <u>against the new firm</u> for "raiding."**

JA441 (emphasis added). The above quotation contains the *only* mention of "raiding" in the Protocol.

Similarly, as explained at the preliminary injunction hearing during an exchange between S&L's counsel and Appellants' expert, John Maine, a "raiding" action is against the new firm:

> Q       Okay. So, I think we're on the same page. The Protocol does not bar or otherwise affect the ability of a firm to bring an action **<u>against a new firm</u>** for raiding, right?
>
> A       That's correct.

JA912 at 98:12-16 (emphasis added). No caselaw or secondary source has been cited for the proposition that "an action against a new firm for raiding" extends beyond the express language of the Protocol to also permit a raiding claim against former employees, let alone any other claim. Neither the District Court nor S&L cite any caselaw or secondary source for the proposition that a claim of "raiding" wholly negates the Protocol. As S&L's counsel acknowledged, "[t]o the extent the Broker Protocol is relevant to this case, it is . . . a simple issue of contract construction[.]" JA885-886 at 71:23 – 72-1. S&L never asserted that the "raiding" exception negated the Protocol's protections because the Protocol simply

provides that a claim for "raiding" could be asserted **against the "new firm**." JA441 (emphasis added). There is no possible way to interpret the plain and unambiguous terms of the Protocol as the District Court unilaterally did here—inventing an exception that does not exist.

The Protocol could have said that "raiding" negates all Protocol protections—but it simply does not. Instead, as explained in the Protocol, investment advisors are entitled to take Protocol Lists and are free to solicit the customers that they serviced at their former firm:

> The principal goal of the following protocol is to further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ("RRs") between firms. If departing RRs and their new firm follow this protocol, **neither the departing RR nor the firm that he or she joins would have any monetary or other liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm**, provided, however, that this protocol does not bar or otherwise affect the ability of the prior firm to bring an **action against the new firm for "raiding."**

> When RRs move from one firm to another **and both firms are signatories to this protocol**, they may take only the following account information: client name, address, phone number, email address, and account title of the clients that they serviced while at the firm . . . . **RRs that comply with this protocol would be free to solicit customers that they serviced while at their former firms**[.]

JA441 (emphasis added).

The District Court erred as a matter of law when it invented a "raiding exception" that would negate the protections of the Protocol. As such, there cannot

23

be a likelihood of success on the merits as to any of the claims asserted against Winters and Atwood.

This argument also applies to any claim against Founders Grove other than for raiding, which, as discussed above, has not been asserted. Accordingly, for all of the reasons discussed above, there cannot be a likelihood of success on the merits as to any of the claims asserted against Founders Grove.

## III. The District Court Abused Its Discretion and Erred as a Matter of Law in Finding a Likelihood of Success on the Merits Related to Claims Asserted Against Support Employees Thompson and Sorensen

The District Court abused its discretion and erred as a matter of law when it enjoined Thompson and Sorensen based on a finding of likelihood of success on the merits dependent on the "raiding" exception to the Protocol and in turn, the DTSA and VUTSA.

As explained above, Thompson and Sorensen are not investment advisors. As such, the Protocol has no impact on any of the claims currently brought against them. *See* JA441 (protecting the transition of "Registered Representatives," i.e., brokers and advisors). No party argued that Thompson or Sorensen, as Director of Client Relations and Senior Client Relationship Associate respectively, were covered by the Protocol. Simply put, Thompson and Sorensen are neither parties to, nor beneficiaries of, the Protocol.

Given the inapplicability of the Protocol, this Court must analyze whether S&L proved a likelihood of success on the merits against Thompson and Sorensen on the two counts analyzed by the District Court—misappropriation of trade secrets under the DTSA and the VUTSA. *See* JA990. Under both the DTSA and VUTSA, S&L was required to show that Thompson and Sorensen misappropriated trade secrets through improper means. *See* JA990-991 (citing Va. Code § 59.1-336, *et seq.*; *OROS, Inc. v. Dajani*, No. 119-cv-351, 2019 WL 2361047, at *2 (E.D. Va. June 4, 2019)). In relevant part, "misappropriation" requires "1. Acquisition of a trade secret" or "2. Disclosure or use of a trade secret[.]" Va. Code § 59.1-366.

The District Court erred as a matter of law because no record evidence exists that Thompson or Sorensen acquired, disclosed, or used any trade secret. The alleged trade secrets in this case are client information. *See, e.g.*, JA694 ("The client lists, information, account numbers, and account names are all trade secrets[.]"). Winters and Atwood, not Thompson or Sorensen, have openly acknowledged their activities permitted by the Protocol:

> In accordance with the Protocol, I provided S&L a list of the clients I served at S&L consisting of: Client Names, Client Addresses, Client Phone Numbers, Client Email Addresses and Client Account Titles. Further, consistent with the Protocol, I only took with me information consisting of: Client Names, Client Addresses, Client Phone Numbers, Client Email Addresses and Client Account Titles. The only information I retained from S&L following my resignation was in accordance with the Protocol.

JA221 ¶7; JA225 ¶6; *see also* JA992 (citing same). On the contrary, Thompson and Sorensen have specifically denied any acquisition or use of any confidential information. JA229 ¶6; JA223 ¶6.

Generally using the term "Defendants," the District Court rendered no findings specific to Thompson or Sorensen. The District Court stated, "[T]he fact that hundreds of Plaintiff's clients have moved their accounts to FGWP is circumstantial evidence that Defendants used Plaintiff's client information to solicit these clients." JA992. S&L offered no evidence that Thompson or Sorenson acquired, disclosed, or used any trade secret. The District Court's reliance on such "circumstantial" evidence presumably means that *any employee* of a company that allegedly violates the DTSA or VUTSA is likely liable for that asserted violation. Such a stretch does not establish that S&L is likely to succeed on the merits and does not meet the "exacting" standards required for a preliminary injunction.

Without any evidence of acquisition, disclosure, or usage of any trade secret by Thompson or Sorensen, the District Court erred as a matter of law and abused its discretion when it found a likelihood of success on the merits against Thompson and Sorensen.

**IV.** **The District Court Abused Its Discretion and Erred as a Matter of Law in Finding That, Absent an Injunction, S&L Would Face Irreparable Harm**

The District Court abused its discretion and erred as a matter of law when it found that S&L would "likely suffer irreparable harm absent the issuance of a preliminary injunction." JA998. The District Court's two-page discussion of irreparable harm (JA996-998) wrongfully rejects, in passing, Appellants' meritorious arguments that an adequate remedy at law (i.e., monetary damages) exists and that S&L's Protocol membership negates a finding of irreparable harm. *See* JA997-998; JA738-742.

**A.** **Adequate Remedy at Law (Monetary Damages)**

The District Court erred as a matter of law in finding irreparable harm despite the existence of an adequate remedy at law. Irreparable harm does not exist if the party seeking injunctive relief can be adequately compensated through monetary damages. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of the judgment."); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later day, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *accord Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th

Cir. 1994); *Sch. Bd. of Richmond v. Wilder*, 73 Va. Cir. 251, 254 (Richmond Cir. Ct. 2007).

This maxim is especially pertinent in cases involving financial advisors, where courts have made clear that injury from lost customers is easily compensated through monetary damages. *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1376 (D. Ga. 2001) (recognizing that damages in these types of cases are calculable because "the securities industry is highly regulated," "each individual transaction is monitored electronically," "every customer transfer . . . is documented," and "[e]very dollar earned in fees by Defendant . . . doing business with those customers that [the plaintiff] considers its own can be traced precisely"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. de Liniere*, 572 F. Supp. 246, 249 (N.D. Ga. 1983) ("[T]he Court finds that any loss of business to Merrill Lynch may be adequately redressed with money damages for breach of contract. The only possible irreparable result would be some vaguely defined loss of business momentum but the Court finds that to be unrealistic in the securities field. The real loss is in commission revenue generated by [the departing broker] from former . . . customers, and that can be readily calculated from the commissions he and his new firm derived from [those customers]."); *see also Prudential Securities, Inc. v. Plunkett*, 8 F. Supp. 2d 514 (E.D. Va. 1998) (loss of customers "can be quantified, and [the investment advisor] can be substantially compensated with monetary

damages for those losses"); *Wachovia Sec., LLC v. Gates*, No. 3:08CV226, 2008 WL 1803612, at \*1 (E.D. Va. April 21, 2008) (finding no irreparable harm in a departing financial advisor case); *UBS Financial Services Inc. v. Fiore*, 2017 WL 3167321, at \*20 (D. Conn. July 24, 2017) ("That damages in this case would be calculable as money damages further establishes that UBS cannot show irreparable harm in the absence of an injunction, even if the Protocol does not apply[.]").

As evidence of the adequate monetary remedy available to S&L, the Employment Agreements have specific provisions identifying liquidated damages for breach of the non-solicitation provision—"three (3.0) times the total Gross Revenue, as defined herein, . . . during the previous twelve (12) month period." JA54 § 15(b); JA69 § 15(b); JA83 § 15(b); JA97§ 15(b).[9] Because S&L claims that Appellants have used S&L's trade secrets to solicit S&L's clients and unlawfully compete against S&L, it has conceded that it has a readily calculable and adequate monetary remedy and has sought to fashion that remedy in its liquidated damages provisions.

In two cases where the argument has been raised and rejected that liquidated damages preclude irreparable harm, both cases involved liquidated damages clauses

---

[9] Appellants do not in any way waive any arguments regarding the enforceability of the non-solicitation provisions, including, but not limited to, the "Buy-Out" provisions, which appear to be yet another attempt by S&L to unilaterally, and impermissibly, modify the Protocol, or that such liquidated damages provisions are a reasonable approximation of damages rather than a penalty clause.

that expressly contemplated injunctive relief. *See Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 WL 1412434, at *15 (M.D.N.C. Apr. 11, 2014) ("[n]othing in this Agreement shall prevent or prohibit [Plaintiff] from seeking injunctive relief"); *JTH Tax, Inc. v. Donofrio*, No. CIV A 2:06CV47, 2006 WL 2796841, at *4 (E.D. Va. Sept. 26, 2006) ("The parties expressly acknowledge and agree that such payments represent only an estimate of a portion of our damages, the full measure of damages is greater, such a breach causes us irreparable harm, and we are entitled to injunctive relief and further damages irrespective of these payments."). Here, in contrast, the Employment Agreements do not expressly reserve the right to seek injunctive relief. JA50-106.

Notably, in another recent case where, like here, there was no reservation for injunctive relief, the district court held that the plaintiff "cannot establish that irreparable harm will flow from the breach of contractual provisions that are otherwise enforceable by liquidated damages clauses." *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, No. CV SAG-22-00176, 2022 WL 326473, at *8 (D. Md. Feb. 3, 2022). Additionally, in a case contemplating the exact issues here, the District Court for the District of Maine denied the employer's application for temporary restraints, holding that "claims of irreparable injury made by [p]laintiff in respect to good will and future economic injury arising from [d]efendant's alleged solicitation conduct are, this Court is satisfied, highly speculative in nature." *Merrill Lynch,*

*Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 74-75 (D. Me. 1993) (holding that the details of any future loss sustained by plaintiffs as the result of any future wrongful solicitation of plaintiff's customers was quantifiable and that there would be no difficulty in hunting down the facts necessary to prove, assess and calculate any future economic loss of the plaintiffs). Client portfolios, after all, are fungible and can be valued for precise monetary value in terms of lost profit. This is especially true in this case, where potential damages would be limited to a finite period of time and where S&L has provided for monetary relief in the liquidated damages provisions of the Employment Agreements.

When, as here, a plaintiff has an adequate remedy at law, courts in the Fourth Circuit analyze whether there are extraordinary circumstances that may give rise to finding the irreparable harm required to issue a preliminary injunction. These exceedingly limited circumstances include instances in which the moving party's business could not survive without a preliminary injunction or in which there is a concern regarding insolvency of the defendant. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). This case does not involve these extenuating circumstances and, therefore, the fact that S&L has an adequate remedy at law precludes a finding of irreparable harm. For this reason, the District Court erred as a matter of law.

## B.    Protocol Membership

The District Court abused its discretion and/or erred as a matter of law in finding irreparable harm despite precedent that S&L's membership in the Protocol establishes a lack of irreparable harm. S&L's voluntary participation in the Protocol highlights its recognition and acceptance of the movement of financial advisors between Member Firms and the non-confidentiality of certain client information. "[I]f there truly was a significant risk of substantial irreparable harm from departed financial advisors soliciting their former clients, one would not expect [plaintiff] to have entered into a Protocol permitting precisely that." *Smith Barney Div. of Citigroup Glob. Markets Inc. v. Griffin*, No. CIV.A. 08-0022-BLS1, 2008 WL 325269, at *7 (Mass. Super. Jan. 23, 2008).

Several courts have reached the same conclusion—there can be no reconciliation of a willing Member Firm in the Protocol and a cry of irreparable harm for actions taken in compliance with the Protocol. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Baxter*, No. 09-CV-45 (DAK), 2009 WL 960773, at *5 (D. Utah Apr. 8, 2009) (discussing the impact of participation in the Protocol on the irreparable harm analysis: "[Plaintiff's] participation in the Protocol indicates that they understand the fluid nature of the industry; brokers routinely switch firms and take their client lists with them. By agreeing to a procedure for departing brokers to take and use client contact information, [plaintiff] tacitly accepts that such an

occurrence does not cause irreparable harm."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Brennan*, No. 07-CV-475, 2007 WL 632904, at *2 (N.D. Ohio Feb. 23, 2007) (finding that even if "[defendant's new firm] is a not a signatory to" the Protocol which courts in this district have generally found precludes the Protocol from applying "[plaintiff's] signature indicates that they understand the fluid nature of the industry; brokers routinely switch firms and take their client lists with them" and "[b]y setting up such a procedure for departing brokers to take client lists, [plaintiff] tacitly accepts that such an occurrence does not cause irreparable harm"); *id.* at *3 ("Specifically, given the existence of the Protocol, it appears that [plaintiff] and industry peers are well aware of, and content with, the idea that brokers will leave and take client lists with them. Such an agreement significantly undercuts the notion that such behavior destroys customer goodwill."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*, 477 F. Supp. 2d 472, 477 (D. Conn. 2007) (finding that plaintiffs cannot "demonstrate risk of irreparable harm" in case where the Protocol applies); *Smith Barney, Inc. v. Darling*, No. 09-C-540, 2009 WL 1544756, at *5 (E.D. Wis. June 3, 2009) ("[I]f there truly was a significant risk of substantial irreparable harm from departed financial advisors soliciting their former clients, one would not expect Smith Barney to have entered into a protocol permitting precisely that.") (citation omitted).

S&L's membership in the Protocol also discredits its claim of irreparable harm based on its "trade secrets" being "lost forever." JA690. S&L, by agreeing to the Protocol, cannot claim that information is confidential and a "trade secret" when it has agreed that the same information alleged to have been used by Appellants falls within the information contemplated and expressly permitted to be used by departing employees under the Protocol. *Credit Suisse Sec. (USA) LLC v. Lee*, No. 11-CIV-08566(RJH), 2011 WL 6153108, at *4 (S.D.N.Y. Dec. 9, 2011) ("In a sense, the issue of whether the respondents complied with the Protocol goes to the issue of whether [plaintiff] will suffer irreparable harm absent an injunction. If the respondents did not breach the Protocol, then the conduct [plaintiff] seeks to enjoin would, even in [plaintiff's] view, be permissible. It is hard to conclude that a party will suffer irreparable harm when the conduct sought to be enjoined is concededly permissible.").

Having voluntarily joined the Protocol, S&L agreed to this fluid nature of the industry, the portability of this select client information, and, of course, clients' freedom to choose with whom they entrust their financial wellbeing. S&L cannot now contend that, by engaging in actions accepted by S&L in accordance with the Protocol, Appellants have caused S&L irreparable harm. Had S&L sought to nullify the effects of the Protocol, S&L could have simply withdrawn from the Protocol. Its failure to do so is inexplicable given the stance it has taken in this case. To this end, the Protocol provides, in pertinent part:

> A signatory to this protocol may withdraw from the protocol at any time and shall endeavor to provide 10 days' written notice of its withdrawal to all other signatories hereto. A signatory who has withdrawn from the protocol shall cease to be bound by the protocol and the protocol shall be of no further force or effect with respect to the signatory.

JA443; JA254. Indeed, as of the filing of this submission, S&L remains a Member Firm with the Protocol and has not sought to withdraw. As such, S&L remains fully subject it provisions and cannot legitimately content that it has been irreparably harmed by advisors who have adhered to the Protocol. JA247-248.

By ignoring this significant precedent and the impact of S&L's membership in the Protocol, the District Court abused its discretion and/or erred as a matter of law.

## CONCLUSION

Appellants ask the Court for the following relief:

1. Vacate the order granting S&L's motion for preliminary injunction.

2. Grant Appellants such other relief as the Court may deem appropriate given the errors in the proceedings below.

Respectfully submitted,

JEREMIAH WINTERS,
CATHERINE "KATE" ATWOOD,
JENNIFER THOMPSON,
ABBEY SORENSEN, AND
ALBERO ADVISORS, LLC, d/b/a
FOUNDERS GROVE WEALTH PARTNERS, LLC

By:

*/s/ Henry I. Willett III*
Henry I. Willett III
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, VA 23219
hwillett@cblaw.com
804-697-4130

## CERTIFICATE OF COMPLIANCE

1.    This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains <u>8,420 words</u>.

2.    This brief complies with the typeface requirements and style requirements because this brief has been prepared in proportionally spaced typeface using Microsoft Word® with 14-point Times New Roman font.

By: <u>*/s/ Henry I. Willett III*</u>
Counsel for Jeremiah Winters, Catherine "Kate" Atwood, Jennifer Thompson, Abbey Sorensen, and Albero Advisors, LLC, d/b/a Founders Grove Wealth Partners, LLC

**CERTIFICATE OF FILING AND SERVICE**

I certify that, on this 16th day of September, 2024, a copy of the foregoing Brief of Appellant was electronically filed with the Fourth Circuit Court of Appeals CM/ECF. I also certify that the foregoing Brief of Appellant is being served this day to all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Henry I. Willett III*
Counsel for Jeremiah Winters, Catherine "Kate" Atwood, Jennifer Thompson, Abbey Sorensen, and Albero Advisors, LLC, d/b/a Founders Grove Wealth Partners, LLC